### J. I. CASE PLOW WORKS et al. v. FINKS.

(Circuit Court of Appeals, Fifth Circuit. May 25, 1897.)

#### No. 582.

SUITS AGAINST RECEIVERS—LEAVE OF COURT.

The provisions of the act of August 13, 1888, authorizing the bringing of suits, without leave of court, against receivers appointed by federal courts, in respect to any act or transaction in carrying on the business connected with the property in their charge, does not authorize the bringing of a suit, without leave, against such a receiver, to establish a right to the property placed in his custody, adverse to his right thereto.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

George Clark, D. C. Bolinger, and J. B. Scarborough, for appellants.
A. P. McCormick, Jr., for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge. This is an appeal from an interlocutory decree of the United States circuit court for the Northern district of Texas on December 5, 1896, on a bill filed by the Manser & Tebbetts Implement Company and Washburn & Moen Manufacturing Company against W. E. Dupree et al. Frank F. Finks was appointed receiver of all the property described in the bill, as well as the property conveyed by W. E. Dupree to one Birkhead, trustee, by chattel mortgage and deed of trust. The property embraced in this order, which passed thereby into the hands of Finks as receiver, consisted of a large stock of goods, wares, and merchandise, as well as certain real estate in Waco, Tex. Subsequently, on December 12, 1896, the presiding judge denied an application to dissolve the injunction, and to modify the order appointing the receiver. The appointment of Finks was confirmed, and he was directed as receiver to proceed with the administration of the trust. On February 6, 1897, Finks, as receiver, filed in the original case his interlocutory petition or bill against the J. I. Case Plow Works et al., in which he represented that the J. I. Case Plow Works and five other companies or firms had brought suit

81 F.—34

against him as receiver in the state court, in which (quoting from the petition) "they seek to recover the title and possession from said receiver of certain personal property set down and described in said petition, which said property is in the hands of your receiver, and turned over and delivered to him in pursuance of an order of this court, and is a part of the goods named, formerly belonging to the said W. E. Dupree; that said suits are being prosecuted without the leave of the circuit court, and that all the property sued for was in his hands as receiver; and he prays for injunction against each of the plaintiffs, and the said court restrained them from further prosecution of said suits." Certain of the plaintiffs in the state court answered, and in their answer admitted the bringing of the suits as alleged by the receiver, and claiming that the title to the property for which said suits were brought was in them, although the possession was in said Finks as receiver. They denied any attempt to interfere with the custody of the property in the hands of the receiver, and averred their purpose to be upon the establishment of their title or ownership to apply to the circuit court for relief as might be proper in the premises. On the hearing the presiding judge entered a decree perpetually enjoining the prosecution of the suits in the state courts. The granting of this decree is the error assigned.

The appellants base their right to maintain these suits in the state court on the provisions of the act of March 3, 1887, as corrected by the act of August 13, 1888, as follows:

"That every receiver or manager of any property, appointed by any court of the United States, may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed, but said suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice." 25 Stat. 436.

It was a well-settled rule of equity practice prior to the passage of this act, and is now, independently of the act, that suits against receivers cannot be properly brought without the leave of the court appointing the receiver; so that the right to bring the suits against the receiver in this case must depend entirely upon the language of the section above quoted, and be controlled by its terms. A receiver may be sued, it will be perceived, in respect of any "act or transaction of his in carrying on the business connected with such property." The suits in these cases were brought to establish the title to certain personal property confessedly in the hands of the receiver, and embraced in the property placed in his custody by order of the court appointing him. There is nothing shown to constitute an "act or transaction" of the receiver. He was simply holding possession of, controlling, and managing the property under the order and direction of the court. The only "act or transaction" connected with the property sued for, shown by the record, was his entering into possession of the property under the order of the court. This was not an act of his "in carrying on the business connected with such property" in any sense whatever; it was more an act of the court in laying its hands upon the property, the receiver being only its instrument. No

other "act" of any kind, or "transaction" of any kind, of the receiver in carrying on the business connected with the property, is alleged or hinted at in these proceedings. The purpose of this act of congress was clearly to make receivers appointed by the circuit courts subject to suits for contracts entered into by them, and for wrongs done in connection with any business carried on by them as receivers, under the authority of the court. Suits such as were brought against the receiver in this case do not come either within the purpose or terms of the act of congress. Further discussion of this question or citation of authority is unnecessary. If these suits are to proceed at all, it must be under and by authority of the act of congress referred to; and, applying to them the language of that act, it is evident that they do not come within its terms.

We might well leave the judgment of the circuit court enjoining these suits to stand upon the language of the statute alone, but let us look at the question presented for a moment in another aspect. It has been held that the judgment of other courts against receivers will be held in the circuit courts as conclusive of the matters therein determined. This being true, to hold that the suits brought against the receiver in this case come within the act of congress would be to hold that other courts could determine and settle the title to all the property in the hands of the receivers of the circuit court. And the circuit court then, treating these judgments as conclusive, would be compelled to carry them into effect, thereby allowing another court to determine the rightfulness of the possession of the property in custody. It cannot be assumed that congress had any such purpose, and the language of the act does not justify any such assumption. It may be added that, even if these suits were properly brought, they would still, under the terms of the act, be subject to the "general equity jurisdiction of the court," etc.; but the opinion hereinbefore expressed makes it unnecessary to discuss the effect of this qualification or proviso to the section. It is contended that by the levy of certain attachments and the service of garnishments the legal custody of the property in controversy, indeed of all of Dupree's stock of goods, etc., had passed into the custody of the state court from which such attachments and garnishments issued prior to the appointment of the receiver by the circuit court. The fact seems to be from the record that at the time the receiver was appointed the actual possession of all this property was in J. C. Birkhead, to whom Dupree had, a few days before, made deed of assignment for the benefit of his creditors. The property was in the hands of this assignee at the time the attachments from the state court were levied. There had been no actual interference with the possession of the assignee by the state officers, and the possession of all the property passed from Birkhead to Finks as receiver, under the order of the circuit court. There was nothing in the levy of these attachments to deprive the circuit court of jurisdiction. It is doubtful, moreover, whether the question of jurisdiction can be properly raised by the appellants. There does not appear to have been any application for possession of the property by the state officers, or any objection to the possession by the receiver of the circuit court, by those whose rights the appel-

lants claim were invaded. We think the injunction against the further prosecution of the suits in the state court against Finks as receiver was properly granted, and the judgment of the court below is affirmed.