## HARMON, RECEIVER, v. BEST.

[No. 21,380. Filed March 8, 1910. Rehearing denied June 8, 1910.]

1. RECEIVERS.—*Actions by and against.—Leave.*—In the absence of a permissive statute, a receiver appointed by a state or federal court can neither sue, nor be sued, without leave of the appointing court. p. 330.

2. RECEIVERS.— *Commissioners to ·Try Garnishment Proceedings against.—Railroads.*—The United States court appointing a receiver for a railroad company has power to appoint a commissioner to try and determine all garnishment proceedings to which such receiver might be made a party, such commissioner being a mere arm of the court and his actions being subject to the approval of the court. p. 331.

3. CONSTITUTIONAL LAW.—*Full Faith and Credit to Judgments.— Federal Judgments.*—The full faith and credit clause of the federal Constitution (Art. 4, §1) applies to federal judgments when questioned in state courts. p. 333.

4. JUDGMENT.—*Evidence of.*—A certified copy of a federal court judgment constitutes conclusive evidence of the record thereof. p. 334.

5. JUDGMENT.— *Federal.— Receivers.— Commissioner to Try Garnishment Cases.—Order for.—Collateral Attack.*—A decree of a federal court appointing a receiver and, as ancillary thereto, appointing a commissioner to determine all garnishment cases that might be brought against him, is not subject to a collateral attack in a state court. p. 334.

6. RECEIVERS.—*Payment of Garnishment Claim on Order of Commissioner.—Effect.*—A receiver for a railroad company who pays a garnishment claim against a laborer allowed by a commissioner appointed to determine all garnishment cases to which the receiver might be made a party, is not liable to such laborer for the amount so paid. p. 335.

7. RECEIVERS.—*Federal.—Suits Against.—Leave.*—Where a federal court appoints a receiver for a railroad company, and thereafter appoints a commissioner to hear garnishment suits against em-

ployes of the company, and such commissioner pays a garnish-
ment claim against a laborer, such laborer cannot, without leave
of the appointing court first obtained, sue the receiver to recover
such wages, under 25 Stat. p. 436, providing that every receiver
appointed by any court of the United States may be sued "in re-
spect of any act or transaction of his in carrying on the business
connected with such property, without the previous leave of
court." p. 336.

From Superior Court of Marion County (75,473); *P. W.
Bartholomew*, Judge.

Action by John Best against Judson Harmon, as receiver
of the Cincinnati, Hamilton and Dayton Railroad Company.
From a judgment for plaintiff, defendant appeals. *Re-
versed.*

*Elam, Fesler & Elam,* for appellant.
*Everett B. Kurtz,* for appellee.

Jordan, J.—Appellee, a resident of Indianapolis, Indiana,
instituted this action against Judson Harmon, as receiver of
the Cincinnati, Hamilton and Dayton Railroad Company.
The railroad of this company runs from Indianapolis, Indi-
ana, to Cincinnati, Ohio. The receiver was appointed by
the United States circuit court for the southern district of
Ohio. Appellee was an employe of the receiver in the op-
eration of said railroad, and sued to recover $81, which
amount he alleged in his complaint the receiver was in-
debted to him for labor performed.

The action was commenced before a justice of the peace
of Center township, Marion county, Indiana. The receiver
filed in said court a plea in abatement, alleging therein that
plaintiff's wages, which he sued to recover, had been gar-
nished in a proceeding brought before a duly qualified com-
missioner of the United States circuit court for the southern
district of Ohio, appointed by the court in the matter of said
receivership to hear and determine all garnishment proceed-
ings, and the pleading alleged a previous tender of the
amount due to plaintiff, after deducting therefrom the

amount garnished,. and this tender was kept good by paying the money into court.

The justice sustained the receiver's plea in abatement, and rendered judgment against plaintiff. From this judgment he appealed to the Superior Court of Marion County. In the latter court the parties entered of record an agreement that the case should be tried on the plea in abatement, and if the court decided against defendant, on the issues formed upon said plea, the court should then treat the case as if defendant had filed a general denial and also a special plea in bar setting up the same facts contained in the plea in abatement, and should then finally decide the case as if the issues were so framed, and base its decision on the same evidence without rehearing it.

Upon a trial the Superior Court of Marion County decided against defendant on the plea in abatement and rendered judgment in favor of plaintiff for the sum of $50, and directed the clerk of the court to pay to plaintiff the amount tendered and paid into court by defendant.

Defendant moved for a new trial, assigning as reasons therein that the court erred in the assessment of the amount of recovery—that it was too large, that the decision was not sustained by sufficient evidence and was contrary to law. This motion, over defendant's exception, was denied, and he has appealed to this court under §1391 Burns 1908, Acts 1901 p. 565, §8, for the purpose of securing the proper construction of the third section of an act of congress known as the judiciary act (25 Stat. p. 436), which is as follows: "That every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager

was appointed, so far as the same shall be necessary to the ends of justice.''

Appellant claims that certain rights guaranteed by the federal Constitution have been denied to him under the decision of the lower court. There is no material dispute in respect to the evidence, and the facts thereby established may be said to be as follows: Judson Harmon, the receiver and appellant herein, was on December 5, 1905, in a proceeding in equity before the United States circuit court for the southern district of the State of Ohio, western division, appointed receiver of the Cincinnati, Hamilton and Dayton Railroad Company. At the February term, 1906, of said court, which was held at the city of Cincinnati, Ohio, the court made and entered the following order in the matter of said receivership: ''It is now ordered by the court that Aaron A. Ferris be, and he hereby is, made a commissioner of this court in this case, for the purpose of hearing, considering and determining all garnishment and attachment proceedings taken or intended to be taken against any employe or other creditor of the receiver heretofore appointed herein in this cause, where the object is to attach or garnish property in the hands or custody of said receiver, or moneys due from him as such to his employes or other creditors. It is further ordered that, where it is desired or intended to institute such attachment or garnishment proceedings, all such claims shall be presented to said commissioner, and that upon said commissioner's giving notice of such claim to said receiver he shall forthwith notify said employe, or person against whom said claim is presented, of said claim, and shall withhold from said employe or other creditor, from moneys due to him, a sufficient amount to satisfy said claim, and that upon the order of said commissioner such amount shall be paid to said employe or other creditor of the receiver, or to said claimant as said commissioner may direct and adjudge, and that said commissioner, in case said claim or the right to maintain such attachment or garnish-

ment proceedings be contested by said employe or other creditor of the receiver, shall fix a time and place for the hearing thereof, giving due notice thereof to said claimant and said employe or other creditor of the receiver, and further that the receiver do not appear to answer any garnishment or attachment proceeding against any employe or other creditor of his, except as herein provided. It is further ordered that persons wishing to prosecute such claims against employes or other creditors of the receiver shall transmit to said commissioner a statement thereof, verified under oath, setting forth the nature of said claim and the date when, and the cause for which, it was incurred, and the ground for attachment or garnishment, together with a fee of $2, which amount shall be deducted as costs from any money due to said employe or amount due such other creditor of said receiver, and shall be returned to said claimant in case his claim and attachment be established; but in case said claim or attachment be not established said sum of $2 shall be retained by said commissioner as his costs; and said receiver is hereby directed to give notice, by circular or otherwise, of the entering of this order, so that any persons desiring to institute such attachment or garnishment proceedings hereunder may have opportunity to avail themselves hereof. It is further ordered that if anybody desires to institute legal proceedings against said receiver for any cause of action, claim or demand against the Cincinnati, Hamilton and Dayton Railroad Company, accruing prior to December 5, 1905, it shall be brought only by intervening petition in this cause, and that no proceeding in attachment, execution, or other final process whatever may be issued against said receiver, otherwise than by leave first granted upon intervening petition in this cause.''

A duly certified copy of this order by the clerk of the court, under the seal of the court, was introduced in evidence. The judge of the court certified that the attestation of the order was in due form of law and was by the proper

officer, the clerk of said court. The clerk also certified that Albert C. Thompson was judge of said federal court, and that full faith and credit were due to all of his official acts as such; all of which was duly attested by the seal of said court.

Aaron A. Ferris, a commissioner appointed by the court under the aforesaid order, testified to the following facts: That he was an attorney residing at Cincinnati, Ohio, and was by the United States circuit court, on March 5, 1906, appointed a commissioner to hear garnishments, and had continued to exercise the duties of such officer to that time. On March 22, 1907, a Chicago newspaper association of the city of Chicago, Illinois, filed with him as such garnishment commissioner a claim for $32.95 arising out of a contract against appellee, John Best, of Indianapolis, Indiana. He notified the paymaster of Judson Harmon, receiver, and the receiver reported to him that the amount owing to Best for wages was $50.90. His testimony further shows that he notified both appellee and his attorney of the garnishment proceedings instituted before him as commissioner; that appellee went to the office of the commissioner and had a talk with him about the claim filed against him by the Chicago association; that there was no notice or service had upon Harmon, the receiver, as garnishee, and no summons was issued to Best, other than letters written to him and his attorney by the commissioner notifying him of the suit in garnishment; that no bond was filed; that the commissioner received a letter from one Kealing, attorney for appellee, in which he said that he disputed the validity of the claim against his client, and requested the commissioner to notify him of the date and place of the hearing; that the commissioner then informed Kealing, by letter, that if he would make out a statement of the grounds of defense, and have it verified under oath by his client, and forward it to him, he would examine into the defense, and, if possible, dispose of the matter without going to Indianapolis; that he further

notified said attorney therein that he had no information as to the grounds of the defense, and that it was necessary that he should be advised in respect thereto before taking any action in the premises; that he was advised by Kealing that the latter did not care to make any statement in respect to what the defense would be until he could see the complaint and bond.

It appears that the commissioner, after waiting on appellee for about five months to set up any defense he had to the garnishment, allowed the garnishing plaintiff $24.95 on its claim, and ordered the receiver, through his paymaster, to pay to plaintiff in the garnishment out of the wages due to appellee from the receiver said amount of money, together with $3 costs, making a total of $27.95, and to pay the remainder of the $50.90—$22.95—to appellee.

It appears that the paymaster of the receiver paid to the commissioner the $27.95, of which amount the commissioner paid to the garnishing plaintiff $24.95, the remaining $3 being applied on costs. Appellee at the trial testified that he had been in the employ of appellant, receiver of the railroad company in question, and had worked for him since the receiver had taken charge of the railroad. He admitted that there had been tendered to him a check for $22.95 before the commencement of this action, but that he had refused to accept it. He testified that he had always been regularly paid by check.

Counsel for appellant argue that before the trial court could take jurisdiction in this action it had to construe the third section of the act of congress in question, and that by permitting appellee to prosecute this action without leave of the court by which the receiver was appointed it erroneously construed said section. Therefore, it is insisted that this appeal is taken to this court in order to present the question of the proper construction of this statute, as well as other statutes here in controversy, as provided by §1391, *supra*.

It is well settled as a general rule that in the absence of a statute authorizing it, a receiver can neither sue nor be sued unless the permission of the court that appointed him is first obtained. *Wayne Pike Co.* v. *State, ex rel.* (1893), 134 Ind. 672; *Gainey* v. *Gilson* (1897), 149 Ind. 58; *Malott* v. *State, ex rel.* (1902), 158 Ind. 678.

The same rule obtains in respect to receivers appointed by federal courts. *Barton* v. *Barbour* (1881), 104 U. S. 126, 26 L. Ed. 672; *Buckhannon, etc., R. Co.* v. *Davis* (1905), 135 Fed. 707, 68 C. C. A. 345.

The main point to be determined is in respect to the proper construction of section three, *supra,* of the act of Congress here involved. Or, in other words, Can such a construction be accorded to that section as, under the facts in this case, will relieve appellee of the burden of securing the permission of the court to sue its receiver to recover the claim in question?

In this case there was no permission obtained by appellee, from the court by which he was appointed, to sue the receiver. Therefore, if this action can be maintained in the absence of such leave, it must be brought within the meaning of said section. It is evident, therefore, at the very threshold of the proceeding, that it became necessary for the lower court, in order to determine its jurisdiction, to give a construction to this statute. The question then arises, What is intended or meant by the following words—"any act or transaction of his in carrying on the business connected with such property"—in the statute here involved?

Counsel advance the further contention that the Superior Court of Marion County, before it could determine whether it should yield respect to the order of the United States circuit court, in appointing the commissioner to consider and determine all garnishment proceedings in such receivership, necessarily was called upon to construe certain provisions of the federal Constitution and acts of congress. It is there-

fore argued that this appeal presents a federal question in regard to rights guaranteed by the Constitution of the United States.

In the cases of *Malott* v. *Shimer* (1899), 153 Ind. 35, 74 Am. St. 278, and *Malott* v. *Hawkins* (1902), 159 Ind. 127, the receiver had been appointed by the United States court for the Terre Haute and Indianapolis Railroad Company and each suit was to recover damages for the alleged negligent killing of appellee's decedent by servants of the receiver engaged in the operation of the railroad. The extent to which section three, *supra,* had modified the general rule of obtaining permission to sue a receiver was considered in each of these appeals, and upon the authority of the decisions of the Supreme Court of the United States we held that by reason of the provisions of section three, *supra,* a receiver appointed by a federal court might be sued in a state court for the negligent killing of a person by said receiver's servants, in the operation of the railroad of which he was receiver, without first securing leave of the court appointing him receiver.

In this case we have not been favored with any brief or argument upon the part of appellee, but are advised by appellant's brief that the trial court disregarded and 2. declined to yield any respect to the order of the United States court appointing the commissioner in the receivership to hear and determine all garnishment proceedings that might be instituted by creditors against the employes of the receiver on the ground, as held by the trial court, that the United States circuit court had no right or power under the law to appoint a commissioner for such purpose, and therefore the order of the court was void and might be attacked collaterally in this action.

The court in the main sought to justify its action under the decision in the case of *Shoultz* v. *McPheeters* (1881), 79 Ind. 373. All that was decided in this latter case was that the statute of this State, that conferred upon a master

commissioner all the powers of a judge to grant injunctions, writs of *habeas corpus,* etc., was unconstitutional and void. That statute professed to invest master commissioners with certain powers of a court independently of the circuit courts by which they were appointed, but the order of the United States court in this case invests the commissioner in this case with no such important powers. He was, under the order of the court, but an arm or instrument thereof and in no sense an independent tribunal. Under the circumstances, the case of *Shoultz* v. *McPheeters, supra,* in no manner supports the holding of the lower court. That the United States circuit court was warranted in making the appointment of the commissioner in question for the purpose designated in its order is supported by authorities. *Central Trust Co.* v. *East Tenn., etc., R. Co.* (1894), 59 Fed. 523; United States Equity Rules, 82, 3 Street, Fed. Eq. Prac. p. 1691.

Such commissioners are regarded and viewed as officers or instruments of the court appointing them, and are under its control, and may be, and generally are required to report their actions or orders to the court for its approval. Persons aggrieved by any acts or orders of such commissioners may generally secure the relief to which they are entitled, if any, by an application to the court appointing the commissioner.

In the case of *Central Trust Co.* v. *East Tenn., etc., R. Co. supra,* the authority of the federal court to appoint in a receivership a commissioner to hear all garnishment proceedings against the funds or property within the custody of the court appointing the receiver was recognized. In the course of the opinion the court said: "Garnishment proceedings are not suits against the receiver, for any act or transaction of his, and such claims must be prosecuted in the manner heretofore settled by order in this cause. Such claims, filed with the commissioner appointed to hear them, can be thus more speedily and economically determined than by

the institution of regular suits. A proceeding for garnish-- ment purposes is an equitable seizure of the funds and prop- erty within the custody of the court. The principle govern- ing such seizure is clearly settled by the decision in *In re Tyler* (1893), 149 U. S. 164, 182, 13 Sup. Ct. 785, 37 L. Ed. 689.''

The case of *Embry* v. *Palmer* (1882), 107 U. S. 3, 2 Sup. Ct. 25, 27 L. Ed. 346, was an action to enforce in the court of Connecticut a judgment rendered in the District 3. of Columbia. The state court refused to enforce the judgment, and allowed a defense that might have been made to the original action to be set up in a suit upon the judgment. Upon appeal taken to the Supreme Court of the United States, that court, in passing upon the question, said that a federal question is raised "whenever a state court refuses to give effect to the judgment of a court of the United States, rendered upon the point in dispute, and with juris- diction of the case and of all parties."

The court referred to §905 R. S. U. S. 1878, providing that records and judicial proceedings of any state or country subject to the jurisdiction of the United States au- thenticated as therein prescribed "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken." The court further said: "The power to prescribe what effect shall be given to the judicial proceedings of the courts of the United States is conferred by other provisions of the Constitution, such as those which declare the extent of the judicial power of the United States, which authorize all legislation necessary and proper for exe- cuting the powers vested by the Constitution in the govern- ment of the United States, or in any department or officer thereof, and which declare the supremacy of the authority of the national government within the limits of the Constitu- tion. * * * Accordingly, the judgments of the courts of the United States have invariably been recognized as upon

the same footing, so far as concerns the obligation created by them, with domestic judgments of the states, wherever rendered and wherever sought to be enforced.''

Upon the same point see the case of *Crescent Live Stock Co.* v. *Butchers Union, etc., Co.* (1887), 120 U. S. 141, 7 Sup. Ct. 472, 30 L. Ed. 614.

The case of *Hancock Nat. Bank* v. *Farnum* (1900), 176 U. S. 640, 20 Sup. Ct. 506, 44 L. Ed. 619, involved a judgment rendered by the United States circuit court in the State of Kansas. An action was instituted on this judgment in the state court of Rhode Island, and the latter court refused to enforce the judgment. In that appeal the Supreme Court of the United States held that §905, *supra,* had been violated, and the fact that the judgment had been rendered in a court of the United States sitting within the State of Kansas, instead of one of the state courts, was immaterial; and

4. further held that under §905, *supra,* a certified copy of the judgment must be received as conclusive evidence of the record, and that the judgment certified must be enforced.

It appears that the trial court considered the order of the United States circuit court appointing the commissioner as void, and regarded it as conferring no power upon

5. the commissioner in garnishment proceedings. Or, in other words, the lower court treated the acts of the commissioner in the garnishment proceedings as though no order of the United States circuit court appointing him had been made. The court, as shown, declined to accord full faith and credit to the order in question, and did not accept it as conclusive in this case, but permitted it to be assailed in this collateral action.

As we have seen by the authorities heretofore cited, judgments and orders of the courts of the United States are recognized and regarded in like manner as are judgments and orders of state courts. Consequently, the order in con-

troversy is entitled to be given, by the courts of this State, the same faith and credit as are given to the judgments of the courts of sister states under article 4, §1, of the federal Constitution, and acts of congress enacted thereunder. *Old Wayne, etc., Assn.* v. *McDonough* (1905), 164 Ind. 321.

The court which appointed appellant as receiver certainly had the power to make all reasonably necessary orders in the administration of said receivership. The order appointing the commissioner was within the court's jurisdiction, and therefore cannot be said to be void. Were it conceded that the court in making the order committed an error, or that the order was impressed with irregularities, nevertheless, these facts could not render the order subject to be reviewed and disregarded by the trial court.

All that appellant can be said to have done was merely to obey the order of the court, and thereunder recognize the acts of the commissioner in the garnishment proceeding. After being notified that a certain amount had been allowed by the commissioner to the garnishing claimant out of the wages of appellant, he deducted the amount of such allowance from the wages due to appellee, and before the commencement of this action tendered to the latter his check for the remainder—$22.95—which sum subsequently, as it appears, was paid into court for appellee. Under the order of the court the receiver, in effect at least, had been directed to distribute the funds in his hand in accordance with the directions of the garnishment commissioner in the proceeding in question. It was the duty of the receiver to obey the order of the court, and, under the circumstances, it is not reasonable to presume that had appellee applied to the court for leave to sue its receiver in order to recover that portion of his wages which had been garnished and paid, the court would have granted such permission.

It must follow, under the facts in this case, that the only

act or transaction which can be attributed to the receiver was his yielding obedience to the order of the court

7. in withholding from appellee the amount of his wages which had been garnished and paid over by the commissioners to appellee's creditor. Certainly no such construction can be accorded to §3, *supra,* which will justify the holding that appellant's action in obeying the order of the court was "any act or transaction of his in carrying on the business connected with such property," and that therefore under said section the receiver might be sued, as was done in this case, without leave first obtained from the court appointing him.

In the case of *J. I. Case Plow Works* v. *Finks* (1897), 81 Fed. 529, 26 C. C. A. 46, the receiver of the federal court had taken possession of certain property under order of the court. Certain parties who claimed to own the property brought suit in the state court without obtaining leave. The court in considering the case said: "The only 'act or transaction' connected with the property sued for, shown by the record, was his entering into possession of the property under the order of the court. This was not an act of his 'in carrying on the business with such property' in any sense whatever; it was more an act of the court in laying its hands upon the property, the receiver being only its instrument."

In the case of *Buckhannon, etc., R. Co.* v. *Davis* (1905), 135 Fed. 707, 68 C. C. A. 345, the court held that the act of a federal receiver of a railroad, in refusing to let another railroad cross his road, was not an act which would warrant condemnation proceedings in a state court without leave. It was held that the court which had placed the receiver in possession of the property was the one to determine whether a portion of that property should be taken from the possession of the receiver.

In the case of *Farmers Loan, etc., Co.* v. *Chicago, etc., R. Co.* (1902), 118 Fed. 204, a part of the property under the

control and possession of the receiver had been leased and a person had been injured by reason of the negligence of the receiver's lessee. It was held in that case that this was no such act of the receiver as would justify a suit against him without-permission of the court appointing him.

In the case of *Central Trust Co.* v. *East Tenn., etc., R. Co., supra,* the court held that an action could not be maintained in a state court without leave to garnishee a receiver of the United States court.

It is evident, we think, under the facts, that the lower court, in holding that appellee might sue appellant and maintain this action without securing leave of the United States circuit court by which the receiver was appointed, did not properly construe §3, *supra.* It may be said further, that the court, under the authorities herein cited, improperly construed §905, *supra,* by not giving full faith and credit to the duly certified order in question, and in not holding it to be conclusive in this action against the collateral attack herein.

For the errors of the court in not properly construing the provisions of the federal statutes here involved, the judgment is reversed and the cause remanded.